Michael R. Brooks, Esq. (SBN 7287)
HUTCHISON & STEFFEN, PLLC
10080 West Alta Drive, Suite 200
Las Vegas, NV 89145
Phone: (702) 385-2500
Fax: (702) 385-2086
Email: mbrooks@hutchlegal.com

Attorneys for Creditor
*Unified Mortgage Services, Inc., as servicer*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In Re:<br><br>SONIA LOPEZ,<br><br>   Debtor. | Case No.: 21-12418-MKN<br><br>CHAPTER 11<br><br>**OBJECTION TO SONIA LOPEZ'S DISCLOSURE STATEMENT, DATED JANUARY 18, 2023**<br><br>Date of Hearing: March 29, 2023<br>Time of Hearing: 9:30 a.m. |

Unified Mortgage Services, Inc. as the servicer for secured creditor, BRILENA, INC. AS TO AN UNDIVIDED 31.2500% INTEREST, MICHAEL BUMBACA AND ADELE BUMBACA HUSBAND AND WIFE AS JOINT TENANTS AS TO AN UNDIVIDED 43.7500% INTEREST, FIRST REGIONAL BANK, AS CUSTODIAN FBO ROBERT PASTER IRA ACCT. NO 051236, AS TO AN UNDIVIDED 25.000% INTEREST ("UNIFIED MORTGAGE"), by and through its attorney of record, Michael R. Brooks, Esq. of the law firm of Hutchison & Steffen and hereby objects to the Motion to Approve the Disclosure Statement on the following grounds.

1

**I.     INTRODUCTION.**

The Disclosure Statement fails to provide "adequate information," as that term is defined under 11 U.S.C. § 1125(a). In particular, the Disclosure Statement lacks adequate information because it does not sufficiently state how the Debtor will pay the fully secured claims under the Debtor's proposed Plan of Reorganization ("POR"). Further, it does not contain adequate information regarding the reason for the bankruptcy filing and the efforts taken to cure the problems of the past. Finally, Unified Mortgage requests that approval of the Disclosure Statement is denied because the Plan is not feasible and not confirmable on its face. In particular, the information available to this Court through the Debtor's monthly operating reports for January and February 2023 show that the revenue generated is approximately half of what is necessary to fund the Plan. Based on the foregoing, Unified Mortgage requests that the Disclosure Statement not be approved.

**II.    FACTUAL SUMMARY**

<u>Multiple Bankruptcies</u>

Debtor filed a Petition for Relief pursuant to Chapter 13 of the Bankruptcy Code on July 16, 2015. [ECF No. 1.] On August 3, 2018, Debtors filed Debtor's Amended Plan No. 6 which was later confirmed by the Court. (the "Proposed Plan"). Unified Mortgage was the servicer for the secured mortgage claim and home equity line of credit against real property 819 North Divisadero Street, Visalia, CA 93291 (the "Property").

Debtor filed the present Petition for Relief pursuant to Chapter 13 of the Bankruptcy Code on May 10, 2021. This is the third bankruptcy filing by the Debtor with respect to subject property.

Debtor filed a Petition for Relief pursuant to Chapter 13 of the Bankruptcy Code on July 16, 2015. The Debtor received a discharge in the 2016 case in 2020.

The Debtor filed a second Chapter 13 in 2021 which was dismissed in 2021 shortly before this bankruptcy was filed.

On May 10, 2021, Debtor filed this voluntary chapter 13 bankruptcy petition. [See ECF No. 1]. On July 18, 2022, the court granted the Debtor's motion to convert to Chapter 11. [See ECF No. 77].

The Section 341 meeting of creditors was held and concluded on August 31, 2022. [See ECF No. 84].

The Debtor later filed her Plan and Disclosure Statement. [See ECF Nos. 108 and 110]. This Court denied conditional approval of the Disclosure Statement, [see ECF No. 114], and the Debtor then filed an amended Disclosure Statement. [See ECF No. 116].

The Disclosure Statement describes the Debtor as a self-employed individual, working as a Mental Health Therapist, with a gross income of about $6,146 per month. Debtor discloses additional monthly income of $1,980 received from rents of an investment property. [See id., p. 5 of 23].

The Disclosure Statement incorrectly states that the disclosure statement has been conditionally approved. [See ECF No. 116, pp.4-5 of 23].

<u>Unified Mortgage's Secured Claim</u>

Unified Mortgage is a servicer for the holder of a Note that is secured by a Deed of Trust on the Property. Unified Mortgage is a recourse lender under the terms of the Note and Deed of Trust. The total amount of Unified Mortgage's claim is $118,098 as evidenced by the Proof of Claim no. 8 filed by Unified Mortgage on December 2, 2021. The bankruptcy court has ruled that the present value of the Property is $200,000.00. As a result, it is anticipated by Unified Mortgage that it will be an undersecured creditor at the time of any hearing on confirmation in this matter.

**III.    LEGAL STANDARD.**

As used in that section of the Bankruptcy Code, adequate information means: "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor . . . that would enable a hypothetical reasonable investor . . . to make an informed judgment about the plan….." 11 U.S.C. § 1125(a)(1); *In re Perez*, 30 F.3d 1209, 1216 (9th Cir. 1994); *See In re Lower*

3

*Bucks Hosp.*, 571 Fed. Appx. 139, 142 (3d. Cir. 2014); *In re PWS Holding Corp.*, 228 F.3d 224, 248 (3d Cir. 2000); *First American Bank v. Century Glove, Inc.*, 81 B.R. 274, 278-279 (D. Del. 1988).

A number of courts have provided a list of the type of information which should be addressed by a disclosure statement. Such information includes the following:

1. The circumstances that gave rise to the filing of the bankruptcy petition;

2. A complete description of the available assets and their value;

3. The anticipated future of the debtor;

4. The source of the information provided in the disclosure statement;

5. A disclaimer, which typically indicates no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement;

6. The condition and performance of the debtor while in Chapter 11;

7. Information regarding claims against the estate;

8. A liquidation analysis setting forth the estimated return that creditors would receive under Chapter 7;

9. The accounting and valuation methods used to produce the financial information in the disclosure statement;

10. Information regarding the future management of the debtor, including the amount of compensation to be paid by any insiders, directors, and/or officers of the debtor;

11. A summary of the plan of reorganization;

12. An estimate of all administrative expenses, including attorneys' fees and accountants' fees;

13. The collectability of any accounts receivable;

14. Any financial information, valuations or pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

15. Information relevant to the risks being taken by the creditors and interest holders;

16. The actual or projected value that can be obtained from avoidable transfers;

17. The existence, likelihood, and possible success of non-bankruptcy litigation,

18. The tax consequences of the plan; and

19. The relationship of the debtor with affiliates.

*See In Re Scioto Valley Mrtg. Co*., 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988) (citations omitted). While not exhaustive, the list of 19 factors is a useful checklist for the type of information which should be contained in a disclosure statement. Id. Not only must a disclosure statement contain adequate information, it cannot contain inaccurate, deceptive or misleading statements; "including false information is a more serious matter than a mere lack of information." *Computer Task Group, Inc. v. Brotby* (*In re Brotby*), 303 B.R. 177, 193, 194, (B.A.P. 9th Cir. 2003) (stating that "the use of misleading or false information in a disclosure statement may be so serious as to invalidate the voting by creditors as to a plan, requiring a new round of voting after necessary corrections to the disclosure statement are made").

Full disclosure is important so that parties "can cast an informed vote." *In re Scioto Valley Mrtg. Co*., 88. B.R. 168, 172 (Bankr. S.D. Ohio 1988). The Ninth Circuit has held that a creditor has standing to object to the adequacy of the disclosure statement even if the inadequacy only affects another class and will not cause the creditor to change its vote because the creditor is "injured because he was denied the information he might have used persuading other creditors to vote against the plan." *In Re Perez*, 30 F.3d 1209, 1217 (9th Cir.1994).

**IV**. **ARGUMENT.**

**A. The Disclosure Statement does not contain Adequate Information.**

The Disclosure Statement in its current form does not address the big issues in this case. First and foremost, any reasonable investor would want to know how the Debtor got into this situation. There are very few answers.

First, there is no explanation about the nature of the debtor's "self-employment." This is important for a couple of reasons. First, it is critical to understanding how the debtor's health impacted her ability to engage in her self-employment activities. Secondly, creditors must be able to determine whether the debtor's current health will impact her ability to make the revenue necessary to fund the plan. Third, the nature of the self-employment is necessary to determine whether the business activities are viable and legal.

The best evidence that the current self-employment of the debtor is a problem is the fact that the case had to be converted from one under Chapter 13 to one under Chapter 11. There is not an explanation for the cash flow issues that resulted in this matter being converted to a Chapter 11.

The monthly operating reports are internally inconsistent. In the month of January 2023, for example, the Debtor claimed total income of $13,892 but the bank records attached to the January MOR only showed deposits of $4,280.00. Similarly, the February 2023 MOR claimed total income of $7,220 but the bank statements only showed deposits of $2,940.00. Moreover, there is no documentary evidence showing the Debtor's self-employment income.

It is important for creditors to be able to determine whether the variations in amount are sustainable.

The post-confirmation statement makes no reference to actions that will be taken by the Debtor to generate the revenue necessary to pay the fully secured claim of Unified. There are also questions regarding the adequacy of information regarding management of the Debtor. There is not enough information for a secured lender to review in making its determination of whether the Debtor has the management in place to succeed in its reorganization. In addition, the Debtor does not adequately explain why the prior Chapter 13 Bankruptcy was not sufficient to resolve the payment defaults.

**B. The Disclosure Statement Should Not be Approved Because the Plan is Patently Unconfirmable.**

"[W]here a plan is on its face nonconfirmable, as a matter of law, it is appropriate for the court to deny approval of the disclosure statement describing the nonconfirmable plan." *In re Silberkraus*, 253 B.R. 890, 899 (Bankr.C.D.Cal.2000); *In re Arnold*, 471 B.R. 578, 586 (Bankr. C.D. Cal. 2012). It is undisputed that a disclosure statement relating to a plan which is facially not confirmable, as a matter of law, cannot be approved as containing "adequate information" under section 1125 of the Bankruptcy Code. In other words, "[i]f the disclosure statement describes a plan that is so fatally 'flawed' that confirmation is 'impossible' the court should exercise its discretion to refuse to consider the adequacy of disclosures." *E. Main Elec. Coop.*, 125 B.R. 329, 333 (Bankr. D. Me. 1991). *See also, In re 266 Washington Assocs.*, 141 B.R. 275, 288 (Bankr. E.D.N.Y. 1992) ("A disclosure statement will not be approved where, as here, it describes a plan which is fatally flawed and thus incapable of confirmation."); *In re Felicity Associates, Inc.*, 197 B.R. 12, 14 (Bankr. D.R.I. 1996), ("plan is so fatally, and obviously flawed that confirmation is impossible").

The primary reason for reviewing patent unconfirmability at the disclosure statement stage is to "avoid engaging in a wasteful and fruitless exercise of sending the disclosure statement to creditors and soliciting votes on the proposed plan when the plan is unconfirmable on its face. Such an exercise in futility only serves to further delay a debtor's attempts to reorganize." *In re Atlanta West VI*, 91 B.R. 620, 622 (Bankr. N.D.Ga. 1988). "If, on the face of the plan, the plan could not be confirmed, then the Court will not subject the estate to the expense of soliciting votes and seeking confirmation." *In re Pecht*, 57 B.R. 137, 139 (Bankr.E.D.Va.1986). "Not only would allowing a nonconfirmable plan to accompany a disclosure statement, and be summarized therein, constitute inadequate information, it would be misleading and it would be a needless expense to the estate." Id.

**1. The Plan is Not Feasible.**

In the instant case, the Plan is patently unconfirmable because it is not feasible given current interest rates and the Debtor's current income. In particular, the Plan projects that the revenues for the

7

reorganized Debtor will leave $266.00 in disposable income to pay general unsecured creditors. The disposable income number is arrived at by allocating $746.46 to pay the Unified Mortgage Claim at 6.5%. However, the monthly debt service on the Unified Mortgage Claim must be amortized at 9.5% based on the *In re Till* decision. Accordingly, the payments on the Unified Mortgage Claim will be $993.05 at a minimum. In addition, the claim of Tulare County would also accrue interest at a rate higher than 5.5%. All disposable income would be exhausted by the increased debt service obligations arising out of the increase in interest.

Moreover, a review of the monthly operating reports filed by the Debtor reveals that she does not have the income sufficient to justify the confirmation of the Plan. In fact, the bank statements attached to the monthly operating reports show an income of roughly one-half of the projected income needed to fund the Plan.

Finally, the monthly operating reports are internally inconsistent and reveal a fundamental inability to fund the Plan. In the month of January 2023, for example, the Debtor claimed total income of $13,892 but the bank records attached to the January MOR only showed deposits of $4,280.00. The demonstrable deposits were clearly not enough to fund the Plan.

Similarly, the February 2023 MOR claimed total income of $7,220 but the bank statements only showed deposits of $2,940.00. Even at the higher amount of $7,220, the Debtor did not have sufficient income to fund the Plan. The reality is that the Debtor's Plan is dead on arrival and this fact is evidence from the face of the Disclosure Statement. As a result, the Disclosure Statement should not be approved.

///

///

///

///

///

8

## IV. CONCLUSION

Based on the foregoing, Unified Mortgage respectfully requests that this Court deny the request to approve the Disclosure Statement.

DATED this 15th day of March, 2023.

          **HUTCHISON & STEFFEN, PLLC**
          */s/ Michael R. Brooks*
          _____
          Michael R. Brooks (SBN 7287)
          Peccole Professional Park
          10080 West Alta Drive, Suite 200
          Las Vegas, NV 89145
          Tel:   (702) 385-2500
          Fax:  (702) 385-2086

          *Attorneys for Unified Mortgage Services, Inc.*

**CERTIFICATE OF SERVICE**

Pursuant to FED. R. CIV. P. 5(b), I certify that I am an employee of Hutchison & Steffen, PLLC and that on this 15th day of March, 2023, I caused the above and foregoing document entitled **OBJECTION TO SONIA LOPEZ'S DISCLOSURE STATEMENT, DATED JANUARY 18, 2023** to be served by Personally transmitting a copy of same via the Court's CM/ECF Internet system to their respective registered email site.

/s/ Danielle Kelley
An employee of Hutchison & Steffen, PLLC